# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **DAVID ELLENBERGER,** | )<br>) |
| **Plaintiff,** | ) Case No.<br>) |
| v. | )<br>) |
| **GALLS LLC**<br>**2720 BURLINGTON ST.**<br>**KANSAS CITY, MO 64116**<br>Serve Registered Agent:<br>   CT Corporation System<br>   5661 Telegraph Road, Suite 4B,<br>   St. Louis, MO 63129<br>**Defendant.** | )<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW, Plaintiff, David Ellenberger, by and through the undersigned counsel, and states and alleges as follows for his Complaint for damages against Galls LLC.

## STATEMENT OF THE CASE

1. Plaintiff alleges herein that, during his employment with Galls LLC, the Defendant discriminated against Plaintiff based on his disability/perceived disability in violation of the Americans with Disabilities Act ("ADA/ADAAA"), 42 U.S.C. §12101, *et seq*., and violated his rights under the Family Medical Leave Act ("FMLA"), in violation of 29 U.S.C. § 2601, *et seq*. Plaintiff further alleges against Defendant claims for violations of his rights under the Missouri Human Rights Act, RSMO § 213.010 *et seq*. based upon Plaintiff's age and his disability/perceived disability.

2. Plaintiff seeks compensatory damages, liquidated damages, punitive damages, lost wages, general emotional distress damages, pre-judgment interest, post-judgment interest,

1

attorneys' fees and costs, and any other remedy this Court determines to be fair, proper, and equitable.

## **PARTIES**

3. Plaintiff is and was at all times relevant herein a Missouri resident.

4. At all times relevant herein, Plaintiff was employed by Galls LLC, ("Defendant").

5. Defendant Galls LLC is and at all relevant times was a Kentucky domestic corporation with its principal place of business in Lexington, Kentucky. Defendant Galls LLC is authorized and does business in Missouri at 2720 Burlington St., North Kansas City, Missouri.

6. Defendant employs 50 or more employees.

7. At all relevant times, all individuals mentioned herein were employed by Defendant and were acting within the scope of their employment and/or on behalf of Defendant, and/or their conduct was approved, encouraged, and/or ratified by Defendant, thereby making Defendant responsible for the above-mentioned conduct under a theory of *respondeat superior*.

## **JURISDICTION AND VENUE**

8. The jurisdiction of this Court in invoked under the FMLA, 29 U.S.C. § 2601, *et seq.,* more specifically 29 U.S.C. § 2617(a)(2), the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*., and the Equal Protection Clause of the 14th Amendment. Additionally, this Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331, as this cause of action arises under statutes of the United States.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events, occurrences and omissions that give rise to this cause of action occurred in this judicial district, and pursuant to 28 U.S.C. § 1391 (b)(1) and (c)(1) because

Defendant operates an office in Kansas City, Clay County, Missouri, conducts regular business there, and therefore is subject to personal jurisdiction within this judicial district.

**ALLEGATIONS OF FACT**

10. This action has been timely filed and Plaintiff has met all conditions precedent to filing this action.

11. At all times relevant to this Complaint, Plaintiff was an employee of Defendant.

12. Plaintiff became employed by and began working for Defendant Galls LLC in approximately November 2021, as a Regional Account Executive.

13. Plaintiff is a sixty-four-year-old male.

14. At all relevant times, Plaintiff complied with all of Defendant's proper policies and procedures for using or taking FMLA leave.

15. Plaintiff appropriately contacted Defendant on each occasion to advise of his absence or tardiness related to FMLA approved leave.

16. Moreover, Defendant's interference with Plaintiff's intent to exercise his rights and utilize FMLA leave time was intended to prevent Plaintiff from engaging his statutory protections under the FMLA.

17. In or about September 2023, Plaintiff informed Regional Director of Sales, Billy Devault; Strategic Account Manager, James Wall; and three branch managers from the central region, Brenda Kenneth, Callie Tepfenhart, and Jeff Oelker; that he intended to take leave under the Family Medical Leave Act for a total knee replacement surgery that was scheduled to take place in January 2024.

18. Upon information and belief, Devault advised Plaintiff not to take leave under the Family Medical Leave Act, to use paid time off and work from home during the recovery period.

19. In or about January 2024, Plaintiff followed his supervisor's directive and did not take leave under the Family Medical Leave Act and only used his Paid Time Off.

20. On or about February 18, 2024, Plaintiff was provided a Performance Improvement Plan.

21. The Plan stated that Plaintiff failed to satisfy his sales goals for 5 consecutive quarters, which Plaintiff denies.

22. After being placed on a Performance Improvement Plan, Plaintiff was directed to create an action plan and Devault was to meet with Plaintiff and train him with the goal of improving Plaintiff's performance.

23. Upon information and belief, Devault did not meet with Plaintiff nor did Devault respond to any phone calls or emails that Plaintiff sent him. In fact, Devault told Plaintiff that training Plaintiff was "not his job."

24. Upon information and belief, during the same time frame, Devault met with Elise Blanchard, Tim Chavez, Jaron Doane, and Taylor Kostas, individually, on more than one occasion to improve their sales skills.

25. The Regional Director of Sales has also provided substantially more feedback and career coaching to other Regional Account Executives, including Elise Blanchard, a female in her thirties; Jaron Doane, a male in his thirties; Tim Chavez, a male in his twenties to thirties; and Shannon Johnson a forty-seven-year-old female.

26. In or about April 2024, Plaintiff was diagnosed with a brain tumor, and informed Billy Devault that he would need to take leave to receive treatment and was concerned about this having a negative impact on his sales. Devault told Plaintiff not to worry about it and to take care of himself.

27. In or about June 2024, Plaintiff began leave, exercising his rights under the Family Medical Leave Act, as well as using his Paid Time Off, to receive treatment for his brain tumor and to undergo a spinal fusion.

28. Plaintiff returned to work in or about September 2024.

29. On or about November 15, 2024, Plaintiff received a notice of termination from Defendant stating that he was being terminated effective immediately.

30. The alleged reason for Plaintiff's termination was that his performance fell below the established sales goals for three quarters.

31. To his knowledge, Plaintiff's sales for the third quarter exceeded the established goal by eleven percent and he exceeded his sales goal in the fourth quarter by sixteen percent. Upon information and belief, Plaintiff believed any shortcomings in the first or second quarter were accounted for due to the medical leave and surgery Plaintiff underwent in January 2024, which resulted in him not being able to drive for two months to meet with clients.

32. Before receiving the notice of termination, Plaintiff had not received any coaching or mentoring to assist him in improving his job performance.

33. In the three years preceding his termination, Plaintiff received only two days of in person training. In comparison, Taylor Kostas, a female in her twenties to thirties, received six in-person training visits from the Regional Director of Sales, Billy Devault, during a three-month period.

34. Regional Director of Sales, Billy Devault, cancelled fifty-four of sixty-nine scheduled meetings with Plaintiff that were intended to be a time where Plaintiff would receive feedback on his performance and essential career coaching.

35. Upon information and belief, three individuals with the same job responsibilities as Plaintiff performed below their established sales goals for three quarters in 2024, but none of them were terminated.

36. Upon information and belief, those other individuals include Regional Account Executive Shannon Johnson, a forty-seven-year-old female; Regional Account Executive Elise Blanchard, a female in her thirties; and Regional Account Manager Graham Hensley, a male in his late fifties.

37. Upon information and belief, Plaintiff's sales goal was increased by 14.5% in 2024, whereas, the other Regional Account Executives' sales goals were only increased by 10% for 2024, despite the fact that Plaintiff's book of business was also reduced by the loss of several large departments with a total value of $660,000 in lost accounts due to discrepancies with the corporate office, not Plaintiff.

38. Upon information and belief, the average age of Defendant's workforce holding the same position as Plaintiff at the time of Plaintiff's termination and thereafter is employees in their twenties and thirties.

39. Plaintiff was the only employee aged sixty-four or older in the position of Regional Account Executive during the duration of his employment with Defendant.

40. Upon information and belief, Plaintiff was terminated because of his age, disability/perceived disability, and in retaliation for exercising his rights under the FMLA.

41. Defendant's conduct set forth herein constitutes violations of the Missouri Human Rights Act as well as violations of the ADA/ADAAA and the Family Medical Leave Act.

42. At all times relevant herein, the individuals referenced were acting within the course and scope of their agency and employment with Defendant, or their actions were expressly

6

authorized by Defendant, thereby making said Defendant vicariously liable for its actions under the doctrine of *respondeat superior*.

43. At all times relevant herein, Defendant ratified the actions of its employees and agents thus making said Defendant vicariously liable for the actions of their employees.

44. As a result of the conduct alleged herein, Plaintiff has incurred and will continue to incur lost wages, emotional distress and lost benefits.

## CONDITION PRECEDENT – DISABILITY

45. Plaintiff filed a timely Charge of Discrimination with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission, on or about January 24, 2025. *A copy of the charge is attached hereto as Exhibit A and incorporated herein by reference.*

46. Plaintiff received his Notice of Right to Sue pursuant to the Missouri Human Rights Act on or about July 28, 2025. *A true and accurate copy of the Notice is attached hereto as Exhibit B and incorporated herein by reference.*

47. This action is timely filed with the Court, and Plaintiff has met all conditions precedent to the filing of this action.

## COUNT I
## ADA/ADAAA – DISABILITY DISCRIMINATION
## 42 U.S.C. §12101, *et seq*.

48. Plaintiff incorporates all the preceding paragraphs and allegations by reference as though fully set forth herein.

49. Defendant is and at all relevant times was an employer within the meaning of the EEOC pursuant to the Americans with Disabilities Act (ADA/ADAAA).

50. The ADA/ADAAA prohibits discrimination against a person who is regarded as having a physical impairment that substantially limits one or more of her major life activities.

51. Plaintiff's disabilities/perceived disabilities impacted his daily life in the following ways:

   a. Following his knee replacement, Plaintiff was required to use a walker for the first month and a cane for the second month of recovery. His limited mobility resulted in his daughter having to live with him temporarily to complete daily tasks such as cooking, cleaning, doing laundry, and caring for his pets. After returning to work, Plaintiff was still utilizing a cane, which caused him difficulty entering and exiting his vehicle and walking into customer locations, which required him to navigate stairs while carrying a backpack and samples. When Plaintiff made Billy Devault aware of these challenges, Devault advised Plaintiff to take his time and be careful.

   b. After Plaintiff's spinal fusion he returned to work with a lifting restriction of nothing more than 25 pounds and he had limited mobility of his neck. These caused difficulty driving his vehicle and visiting customer locations.

   c. While the Plaintiff's tumor was benign, it continued to grow creating much emotional distress for Plaintiff due to the chance it would cause him to lose his vision because it was located on his pituitary gland, just below the optic nerve.

52. Defendant discriminated against Plaintiff based on his disabilities/perceived disability, in that Defendant instructed Plaintiff not to utilize FMLA or short-term disability for his recovery period following the January 2024 knee surgery, and then penalized Plaintiff because he was not able to drive and fully perform the functions of his position while recovering from his surgery, including but not limited to placing Plaintiff on a PIP.

8

53. Defendant discriminated against Plaintiff based on his disability/perceived disabilities by not providing support in the form of coaching required under the PIP.

54. Defendant discriminated against Plaintiff based on his disability/perceived disability by increasing Plaintiff's sales goals at a higher percentage than others in the same position as Plaintiff.

55. Plaintiff further discriminated against Plaintiff by terminating his employment in November of 2024, approximately two months after he returned to work following medical treatment for a brain tumor.

56. The conduct and actions by the above-described perpetrators and agents of Defendant were performed based on Plaintiff's perceived disabilities/disability and constituted discrimination based on disability/perceived disabilities.

57. Plaintiff suffered tangible adverse employment actions as a result of Defendant's discriminatory conduct, including, but not limited to, termination of his employment.

58. Plaintiff was terminated in November of 2024 for unlawful and discriminatory reasons and the conduct set forth herein violates the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*.

59. Defendant's conduct caused Plaintiff emotional distress, including anxiety and depression, and caused Plaintiff to incur lost wages and benefits.

60. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

61. Defendant's treatment of Plaintiff was punitive in nature and was based upon Plaintiff's status as a person regarded as having a physical impairment that substantially limits one or more major life activities.

62. Supervisory and administrative level employees of Defendant knew or should have known of the disability discrimination against Plaintiff based on such perception, but Defendant failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop or otherwise remedy the discrimination.

63. The actions and conduct set forth herein were outrageous and showed an evil motive, reckless indifference, or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter others from similar conduct.

64. At all times mentioned herein, the above referenced perpetrators were employees, supervisors, managers, agents, servants, and employees of Defendant and were at all such times acting within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for punitive damages under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count I of this Complaint, for a finding that Plaintiff was subjected to unlawful disability discrimination prohibited by 42 U.S.C. §12101, *et seq.*, for an award of compensatory and liquidated damages, pre-judgment and post-judgment interest as provided by law, for Plaintiff's costs herein expended, for Plaintiff's reasonable attorneys' fees, and such other relief as this Court deems just and proper, including equitable relief.

## COUNT II
## VIOLATION OF FMLA
## 29 U.S.C. § 2601, *et seq.*

65. Plaintiff incorporates all the preceding paragraphs and allegations by reference as though fully set forth herein.

66. Plaintiff was employed by Defendant.

67. Defendant is a covered employer as defined by 29 U.S.C. § 2601 *et seq.* and 29 U.S.C. § 2611(4)(A), as it is private sector employer, engaged in commerce, and employs 50 or more employees.

68. Plaintiff worked for the Defendant for at least 12 months.

69. Plaintiff worked for Defendant at a location where 50 or more employees of Defendant worked within 75 miles.

70. Plaintiff was employed by Defendant and worked more than 1250 hours in the 12 months prior to her request for FMLA leave that resulted in her forced leave.

71. As an employee of Defendant, Plaintiff was eligible for FMLA leave, as defined by 29 U.S.C. § 2601, *et seq.*, and 29 U.S.C. § 2611(2)(A) (B).

72. Plaintiff suffered from a serious medical condition that required continuing treatment by health care providers. These serious medical conditions included the need for spinal fusion, and medical treatment for a brain tumor.

73. Defendant was aware of Plaintiff's serious medical conditions.

74. Plaintiff's serious medical conditions rendered him, at times, unable to perform the functions of his employment with Defendant.

75. As a result of his condition, Plaintiff was required to and did take leave pursuant to 29 U.S.C. § 2601, *et seq*.

76. Under the FMLA, Plaintiff was entitled to take leave to seek treatment for his serious medical conditions from June 2024 to September 2024.

77. In the 12 months preceding his termination, Plaintiff did not exceed 12 work weeks of FMLA leave.

78. An eligible employee who takes FMLA leave is protected from retaliation or other harassing or discriminatory treatment.

79. The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA.

80. Plaintiff's termination was a consequence of him exercising his rights under the FMLA.

81. Defendant lacked good faith in its treatment of Plaintiff relating to his exercise of rights under the FMLA.

82. Defendant deprived, interfered with, restrained, and/or denied Plaintiff of his rights under the FMLA, and/or Defendant retaliated against Plaintiff, by terminating Plaintiff from his position in response to his use of and/or request for FMLA leave.

83. The treatment of Plaintiff by Defendant under the circumstances set out herein was prohibited by the FMLA.

84. Defendant's actions against and treatment of Plaintiff were those which a reasonable employee would have found materially adverse.

85. The FMLA makes it unlawful for an employee's use of FMLA leave to result in the loss of any employment benefit which accrued prior to the start of the employee's FMLA leave.

86. The Family Medical Leave Act prohibits employers from discriminating against employees for exercising their rights under the Act. 29 U.S.C. §§ 2612, 2615(a)(2) (2000).

87. Specifically, Defendant retaliated against Plaintiff for taking FMLA leave by terminating Plaintiff's employment approximately two months after his return from FMLA leave.

88. Defendant discriminated against Plaintiff and retaliated against him for exercising his rights under the FMLA.

89. A causal connection exists between Plaintiff's protected FMLA activity and the adverse employment actions taken by Defendant.

90. The reasons given by Defendant for the misconduct toward Plaintiff and his termination were pretext to cover up their unlawful and retaliatory motives.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count II. of this Complaint, as follows:

a. Award Plaintiff damages in an amount equal to any wages, salary, employment benefits, and other compensation and/or benefits denied or lost to Plaintiff by reason of the violation of the FMLA, and interest on the same amounts;

b. Award Plaintiff liquidated damages equal to the sum of the amount of any wages, salary, employment benefits, and other compensation denied or lost to Plaintiff and the interest on that amount;

c. Award Plaintiff such equitable relief as may be appropriate, including employment and promotion;

d. Award Plaintiff reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action; and

e. Award such other and further relief as to the court deems just and equitable.

## COUNT III
## VIOLATION OF FMLA
## 29 U.S.C. § 2601, *et seq*.

91. Plaintiff incorporates all the preceding paragraphs and allegations by reference as though fully set forth herein.

92. Plaintiff suffered from a serious medical condition that required taking leave for a surgical procedure and recovery therefrom. More specifically, the serious medical condition was that Plaintiff required a knee replacement.

93. Defendant was aware of Plaintiff's serious medical condition.

94. Plaintiff's serious medical condition rendered him, at times, unable to perform the functions of his employment with Defendant.

95. As a result of his condition, Plaintiff requested to take leave pursuant to 29 U.S.C. § 2601, et seq., and 29 U.S.C. § 2612(b) and 29 C.F.R. § 825.117.

96. Under the FMLA, Plaintiff was entitled to take leave to seek treatment for his serious medical condition.

97. In the 12 months preceding his request, Plaintiff did not exceed 12 work weeks of FMLA leave.

98. The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA.

99. In the late Fall of 2023, Plaintiff informed Duvall of his need for FMLA leave and intent to take FMLA leave to recover from his knee replacement surgery scheduled for January of 2024.

100. Plaintiff planned to take FMLA leave because he would be unable to drive and fully perform the responsibilities of his position following his knee replacement surgery.

101. Duvall instructed Plaintiff not to take FMLA leave and to work from home during his recovery from knee replacement surgery. Plaintiff thereafter asked the Human Resources Department if this was an appropriate way to handle his leave and was told to do what Duvall instructed.

102. Plaintiff's intent and desire to take FMLA leave to recover from his knee replacement surgery was interfered with by Defendant.

103. Because of Defendant's interference with Plaintiff's right to take FMLA leave for his knee replacement recovery, Plaintiff could not fully perform the responsibilities of his position including driving to visit clients.

104. Defendant held these restrictions against Plaintiff and placed Plaintiff on a PIP for not meeting his sales goals.

105. Defendant lacked good faith in its treatment of Plaintiff for attempting to exercise his rights under the FMLA.

106. Defendant was not entitled to direct Plaintiff to not request FMLA leave, thus, the improper directive interfered with Plaintiff's rights the FMLA and were in violation of the FMLA, and therefore resulted in an adverse employment action being taken against Plaintiff.

107. Defendant deprived, interfered with, restrained, and/or denied Plaintiff of his rights under the FMLA, and/or Defendant retaliated against Plaintiff, by directing Plaintiff to not apply for FMLA leave, by not accommodating Plaintiff; and placing Plaintiff on a PIP.

108. The treatment of Plaintiff by Defendant under the circumstances set out herein was prohibited by the FMLA.

109. Defendant's actions against and treatment of Plaintiff were those which a reasonable employee would have found materially adverse.

110. Defendant interfered with Plaintiff's attempt to utilize FMLA leave by (a) directing him not to utilize FMLA leave, (b) not accommodating Plaintiff's sales quotas while he was recovering from his serious medical condition, and unable to fully perform the responsibilities of the position; (c) and placing Plaintiff on a PIP.

111. A causal connection exists between Defendant's interference with Plaintiff's protected FMLA activity and the adverse employment actions taken by Defendant.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count III of this Complaint, as follows:

a. Award Plaintiff damages in an amount equal to any wages, salary, employment benefits, and other compensation and/or benefits denied or lost to Plaintiff by reason of the violation of the FMLA, and interest on the same amounts;

b. Award Plaintiff liquidated damages equal to the sum of the amount of any wages, salary, employment benefits, and other compensation denied or lost to Plaintiff and the interest on that amount;

c. Award Plaintiff such equitable relief as may be appropriate, including employment and promotion;

d. Award Plaintiff reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action; and award such other and further relief as to the court deems just and equitable

## COUNT IV
### Missouri Human Rights Act – Age Discrimination
### RSMO § 213.010 *et seq.*

112. Plaintiff incorporates all the preceding paragraphs and allegations by reference as though fully set forth herein.

113. The conduct and actions of Defendant constitute improper and discriminatory behavior.

114. The Missouri Human Rights Act prohibits discrimination against a person who is over the age of forty but less than the age of seventy.

115. Plaintiff is an individual age sixty-three.

116. The discrimination to which Plaintiff was subjected, based on their age, included terminating Plaintiff's employment and creating pretextual, false and inconsistent reasons for the termination.

117. Plaintiff's age was a contributing factor in the discriminatory conduct they suffered and experienced, including but not limited to termination.

118. As a direct result of the conduct described herein, Plaintiff sustained damages, including lost wages, lost benefits, emotional distress, and deprivation of their civil rights under Missouri law.

119. At all times relevant herein, the individuals referenced herein were acting within the course and scope of their agency and employment with Defendant, or their actions were expressly authorized by Defendant thereby making said Defendant vicariously liable for their actions under the doctrine of *respondeat superior*.

120. At all times relevant herein, Defendant ratified the actions of its employees and agents thus making said Defendant vicariously liable for the actions of their employees.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count IV of the Petition, for a finding that she has been subjected to unlawful age discrimination as prohibited by R.S.Mo. § 213.055, for an award of compensatory damages, including lost wages, lost benefits and emotional distress damages; pre-judgment and post judgment interest as provided by law; for her costs expended and reasonable attorneys' fees; and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT V
**Missouri Human Rights Act – Disability/Perceived Disability Discrimination**
**RSMO § 213.010 *et seq*.**

121. Plaintiff incorporates all the preceding paragraphs and allegations by reference as though fully set forth herein.

122. The Missouri Human Rights Act prohibits discrimination against a person who has, is regarded as having, or has record of a "disability" i.e. a physical or mental impairment that substantially limits one or more major life activities.

123. Plaintiff's disabilities/perceived disabilities constituted impairments that substantially limited one or more of his major life activities in the following ways:

   a. Following his knee replacement, Plaintiff was required to use a walker for the first month and a cane for the second month of recovery. His limited mobility resulted in his daughter having to live with him temporarily to complete daily tasks such as cooking, cleaning, doing laundry, and caring for his pets. After returning to work, Plaintiff was still utilizing a cane, which caused him difficulty entering and exiting his vehicle and walking into customer locations, which required him to navigate stairs while carrying a backpack and samples. When Plaintiff made Billy Devault aware of these challenges, Devault advised Plaintiff to take his time and be careful.

   b. After Plaintiff's spinal fusion he returned to work with a lifting restriction of nothing more than 25 pounds and he had limited mobility of his neck. These caused difficulty driving his vehicle and visiting customer locations.

   c. While the Plaintiff's tumor was benign, it continued to grow creating much emotional distress for Plaintiff due to the chance it would cause him to lose his vision because it was located on his pituitary gland, just below the optic nerve.

124. Plaintiff's disclosure of his medical condition, the necessary surgeries, and recovery time with restrictions on driving, lifting, and required use of a cane to walk resulted in Defendant being aware of Plaintiff being disabled and/or Defendant regarding Plaintiff as having a disability in the form of an inability to drive a motor vehicle, or walk without a cane while he was recovering from knee surgery and spinal fusion.

125. Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

126. The conduct and actions of Defendant constitute improper and discriminatory behavior.

127. Defendant discriminated against Plaintiff based on his disability/perceived disability by increasing Plaintiff's sales goals at a higher percentage and failing to provide the accommodation Plaintiff had indicated he would need during the time of his recovery and inability to operate a motor vehicle to visit clientele in person.

128. Defendant further discriminated against Plaintiff by terminating his employment in November of 2024, approximately two months after he returned to work following medical treatment for a brain tumor.

129. Plaintiff suffered tangible adverse employment actions as a result of Defendant's discriminatory conduct, including but not limited to termination of his employment in November 2024.

130. The discriminatory conduct of Defendant, which included terminating Plaintiff's employment and creating pretextual, false and inconsistent reasons for the termination, was motivated by Plaintiff's disability/perceived disability.

131. Plaintiff's disability/perceived disability was a contributing factor in the discriminatory conduct they suffered and experienced, including but not limited to termination.

132. As a direct result of the conduct described herein, Plaintiff sustained damages, including lost wages, lost benefits, emotional distress, and deprivation of their civil rights under Missouri law.

133. At all times relevant herein, the individuals referenced herein were acting within the course and scope of their agency and employment with Defendant, or their actions were expressly authorized by Defendant thereby making said Defendant vicariously liable for their actions under the doctrine of *respondeat superior*.

134. At all times relevant herein, Defendant ratified the actions of its employees and agents thus making said Defendant vicariously liable for the actions of their employees.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count V of the Petition, for a finding that he has been subjected to unlawful discrimination as prohibited by the Missouri Human Rights Act, R.S.Mo. § 213.055; for an award of compensatory damages, including lost wages, lost benefits and emotional distress damages; for reinstatement or an award of front pay; pre-judgment and post judgment interest as provided by law; for costs expended herein and reasonable attorneys' fees; and for such other and further relief as this Court deems just and proper, including equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

**HOLMAN SCHIAVONE, LLC**

By: /s/Anne Schiavone
Anne Schiavone, MO Bar #49349
Mary Beth Youngworth, MO Bar #69106
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
aschiavone@hslawllc.com
byoungworth@hslawllc.com
**ATTORNEY FOR PLAINTIFF**